E-FILED
Friday, 17 April, 2026 12:28:20 PM
Clerk, U.S. District Court, ILCD

FILED
4/16/2026
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
26-4102

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF ILLINOIS**

DIPESH SINGLA, ***individually and on behalf of all others similarly situated,***

dipeshsingla668@gmail.com, +1 7734571046 / +917973996818

**MOVANT,**

v.

UNITED STATES OF AMERICA; PAM BONDI, in her official capacity as Attorney General of the United States; THE LEGAL SERVICES CORPORATION; and THE AMERICAN BAR ASSOCIATION,

**RESPONDANTS.**

**Case No.: _______________**

**ASSIGNED TO: _______________**

# PUBLIC INTEREST LITIGATION

**(IMPACT LITIGATION AND CLASS ACTIONs CHALLENGING SYSTEMIC BARRIERS TO ACCESS TO JUSTICE, LEGAL REPRESENTATION, AND THE CIVIL RIGHT TO COUNSEL)**

*Pursuant to Rule 23 of the Federal Rules of Civil Procedure*

**JURY DEMANDED**

**CLASS ACTION LITIGATION**

**REQUEST TO PROCEED IN FORMA PAUPERIS, SERVING SUMMONS THROUGH EMAIL OR SOCIAL MEDIA, EMAIL FILINGS AND ORDERS, PRESENTMENT VIA ONLINE WEBCONFERENCE MEETINGS.**

**PLAINTIFF'S RESERVATION OF RIGHTS:** Plaintiff respectfully submits that should this Honorable Court find any deficiency in form, standing, or procedural compliance, the Court shall afford Plaintiff reasonable opportunity to cure such deficiency rather than dismissing this action. In the event of dismissal, Plaintiff expressly reserves all rights to appeal such dismissal to the United States Court of Appeals, and if necessary, to the Supreme Court of the United States, for the greater good of society and for the millions of ***indigent Americans*** who cannot otherwise secure legal representation or access to justice.
Plaintiff recognizes that the term "Public Interest Litigation (PIL)" may not constitute a distinct procedural vehicle under United States law; accordingly, Plaintiff respectfully reserves all rights to amend, reframe, or replead this action in conformity with the Court's orders and applicable federal rules if the Court finds any aspect curable or otherwise maintainable. This action is brought in good faith, is neither frivolous nor baseless, and seeks final judicial resolution of substantial access-to-justice disputes affecting Americans, and Plaintiff respectfully requests protection from any adverse action arising solely from filing this matter, while further requesting that the Court, to the extent permissible, treat the pleadings as invoking its inherent authority to address systemic issues reflected in the documented justice-gap data (including the reported ~92% unmet civil legal need).

Loosening of Conditions per Hon'ble IL Supreme Court: https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/7b02583a-fc05-46f8-acf1-ff0ac6dfdfcb/041426-1.pdf

## PLAINTIFF'S NOTE REGARDING DEFENDANTS

Plaintiff wishes to make clear, at the outset, that the naming of Defendants in this action is not born of any adversarial intent, personal grievance, or hostility toward any of the named Defendants or the institutions they represent. Plaintiff recognizes and respects the important roles that the United States Department of Justice, the Legal Services Corporation, and the American Bar Association and etcetera play in maintaining the rule of law and administering justice in the United States. Many of these institutions have, in fact, taken positive steps toward expanding access to justice, including the ABA's Resolutions 112A (2006) and 114 (2018) supporting a civil right to counsel.

However, ***Article III*** of the United States Constitution requires that federal courts hear only actual "cases" and "controversies," and the Federal Rules of Civil Procedure require the naming of proper parties against whom relief is sought. See Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). Without named Defendants, this Court would lack subject matter jurisdiction, and the systemic reforms sought herein would be impossible to adjudicate. The Defendants have been identified not because they are "wrongdoers" in the traditional adversarial sense ***in this particular matter,*** but because they are the governmental and institutional entities that possess the authority, power, and capacity to implement the systemic reforms that this action seeks. They are named in their official capacities precisely because they are best positioned to advance the greater good that this litigation pursues.

***This is a public interest litigation filed for the greater good of society and for the benefit of all those who cannot afford access to the American justice system. Plaintiff respectfully invites all Respondents to view this action not as a legal threat, but as an opportunity to collaborate in the service of justice and welcomes any constructive participation by the Defendants in achieving the reforms described herein.***

# TABLE OF CONTENTS

TABLE OF CONTENTS .......... 3
I. JURISDICTION AND VENUE .......... 4
II. PARTIES .......... 4
III. CLASS ACTION ALLEGATIONS .......... 5
IV. STATEMENT OF FACTS .......... 5
V. THE JUSTICE GAP IN AMERICA: A SYSTEMIC CRISIS .......... 6
VI. THE CIVIL RIGHT TO COUNSEL: FROM GIDEON TO CIVIL GIDEON .......... 8
VII. PUBLIC INTEREST LITIGATION: ORIGINS, PRINCIPLES, AND PURPOSE .......... 9
VIII. CAUSES OF ACTION .......... 10
IX. COUNT I: DECLARATORY RELIEF - DUE PROCESS VIOLATION .......... 10
X. COUNT II: EQUAL PROTECTION VIOLATION .......... 11
XI. COUNT III: VIOLATION OF THE RIGHT OF ACCESS TO COURTS .......... 11
XII. COUNT IV: DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. SECTION 1983 .......... 12
XIII. REQUEST FOR INJUNCTIVE RELIEF .......... 12
XIV. PRAYER FOR RELIEF .......... 12
XV. ANTI-DISMISSAL ARGUMENTS AND PRESERVATION OF APPEAL RIGHTS .......... 13
XVI. RESERVATION OF APPEAL RIGHTS .......... 13
XVII. CONCLUSION .......... 14
EXHIBIT A: STATISTICAL EVIDENCE AND DATA .......... 15
EXHIBIT B: BIBLIOGRAPHY AND LINKED SOURCES .......... 15
VERIFICATION .......... 18

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1331 (federal question) and 28 U.S.C. Section 1343(a)(3) and (a)(4) (civil rights actions), and under 42 U.S.C. Section 1983 for deprivations of rights secured by the Constitution and laws of the United States. This action also arises under the Fifth and Fourteenth Amendments to the United States Constitution, guaranteeing due process and equal protection of law.
2. Venue is proper in the Central District of Illinois pursuant to 28 U.S.C. Section 1391(b) because a substantial part of the events giving rise to the claims occurred within this district, the Defendants are subject to personal jurisdiction in this district. Moreover, the systemic barriers challenged in this complaint affect residents of this district and indeed every district in the United States.
3. This action is brought as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, on behalf of Plaintiff and all others similarly situated who have been, are being, or will be denied meaningful access to the courts and effective legal representation in civil proceedings due to indigence and the systemic barriers described herein.

## II. PARTIES

4. Plaintiff Dipesh Singla is an individual residing at ***#184, NAC, Shivalik Enclave, Manimajra, Chandigarh, 160101, India***. Plaintiff brings this action on behalf of himself and all others similarly situated who are unable to access the United States justice system due to prohibitive costs of legal representation, the absence of a civil right to counsel, the restrictive attorney licensing regime that prevents qualified foreign legal professionals from providing affordable representation, and the systemic failure of existing pro bono, legal aid, and SOME court-assistance programs to provide meaningful access to justice. Plaintiff has personally attempted to seek legal representation in the United States and has been met with exorbitant retainer fees often around $20000, case evaluation fees exceeding $5,000, and hourly rates ranging from $500 to $850 or more, rendering access to counsel impossible.
5. Respondent United States of America is the sovereign entity that maintains and enforces the current legal framework governing access to federal courts, attorney licensing requirements, and the allocation of funding for civil legal services. The United States, through Congress and the Department of Justice, has the authority and the obligation to ensure that the constitutional guarantees of due process and equal protection are meaningfully available to all persons within its jurisdiction, including indigent civil litigants.
6. Respondent Pam Bondi is a respondent in her official capacity as Attorney General of the United States. The Attorney General is the chief law enforcement officer of the United States and oversees the Department of Justice, which is responsible for ensuring the fair administration of justice. The Attorney General has authority over policies affecting access to justice, legal representation for indigent persons, and the enforcement of civil rights statutes.
7. Respondent the Legal Services Corporation ("LSC") is a publicly funded, nonpartisan nonprofit corporation established by Congress in 1974 pursuant to the Legal Services Corporation Act, 42 U.S.C. Section 2996 et seq. LSC is the largest single funder of civil legal aid for low-income Americans and funds 133 grantee organizations across all 50 states. LSC has been chronically underfunded for decades, with its inflation-adjusted budget declining by nearly 40% since its inception, resulting in LSC grantees being unable to provide any or enough help for 71% of civil legal problems brought to them, constituting an estimated 1.4 million unaddressed legal problems per year.
8. Respondent the American Bar Association ("ABA") is a voluntary professional association of lawyers and law students that wields enormous influence over attorney licensing standards, the Model Rules of Professional Conduct, and access-to-justice policy in the United States. The ABA has adopted Resolutions 112A (2006) and 114 (2018) urging the provision of counsel for indigent persons in civil cases involving basic human needs, yet has not taken

adequate steps to implement these resolutions or to reform the structural barriers that prevent affordable representation. The ABA's Model Rules on unauthorized practice of law, adopted by state courts nationwide, prevent qualified foreign attorneys from providing representation to indigent Americans.

## III. CLASS ACTION ALLEGATIONS

**9.** Plaintiff brings this action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure on behalf of the following class: All persons within the United States who, due to indigence, inability to afford legal representation, or the systemic barriers described herein, have been denied meaningful access to the courts or effective legal representation in civil proceedings in the United States District Courts and state courts.

**10.** This class is so numerous that joinder of all members is impracticable. The Legal Services Corporation's 2022 Justice Gap Report found that 92% of low-income Americans receive no or inadequate legal assistance for their civil legal problems. Approximately 150 million civil legal problems arise annually in America, of which 120 million go completely unaddressed. The class likely numbers in the tens of millions of persons (https://www.amacad.org/publication/achieving-civil-justice/section/3).

**11.** There are questions of law and fact common to the class, including: (a) whether the current system of requiring licensed domestic attorneys for legal representation violates due process and equal protection when indigent persons cannot afford such representation; (b) whether the federal government has failed to provide adequate funding for civil legal services, effectively denying access to justice; (c) whether the restrictions on foreign attorney participation constitute an unreasonable barrier to access to justice; and (d) whether a civil right to counsel should be recognized in proceedings involving basic human needs.

**12.** Plaintiff's claims are typical of the claims of the class. Plaintiff, like all members of the class, has been unable to secure legal representation due to prohibitive costs and systemic barriers that render the promise of equal justice under law illusory for those without financial means.

**13.** Plaintiff will fairly and adequately protect the interests of the class. Plaintiff is motivated by a genuine commitment to access to justice and has no interests adverse to those of the class.

**14.** This action is maintainable as a class action under Rule 23(b)(2) because the Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

## IV. STATEMENT OF FACTS

**15.** Plaintiff Dipesh Singla is a resident of Chandigarh, India, who has personally experienced the insurmountable barriers that prevent indigent individuals from accessing the United States justice system. Despite having a genuine legal grievance and a desire to seek redress through proper legal channels, Plaintiff has encountered the following systemic obstacles:

(a) Exorbitant Attorney Fees: Plaintiff contacted numerous attorneys in the United States and was quoted retainer fees of $20,000 or more, with hourly rates ranging from $500 to $850 or higher. Some attorneys demanded fees of $5,000 merely to evaluate whether they would accept the case. These fees are grossly disproportionate to the claims at issue, which often involve employment disputes where the underlying wage rate is $16.20 to $40 per hour, rendering any cost-benefit analysis of litigation absurd for a reasonable person of ordinary means.

(b) Unavailability of Contingency Representation: Plaintiff was informed that contingency fee arrangements are not available for his type of claim because Defendants are powerful institutions that rarely concede liability, making contingency representation economically irrational for domestic attorneys. This creates a situation where the most powerful institutional defendants effectively

face no legal challenge from those they have harmed, because no attorney will bear the economic risk of representing an indigent plaintiff against a well-funded institutional defendant.

(c) Failure of Pro Bono and Legal Aid Systems: Plaintiff reached out to multiple pro bono organizations and legal aid societies, many of which did not even respond to general inquiries. Those that did respond informed him that they were either at capacity or that his case fell outside their limited scope of services. The 2022 LSC Justice Gap Report confirms this experience: LSC grantees turn away 71% of those seeking help. The Legal Services Corporation's own data reveals that for every client served by legal aid programs, a second client is turned away. See ABA Bar Leader, "Access to Justice: Is Civil Gideon A Piece of the Puzzle?" (July-Aug. 2008). Some infact commit that they provide 1000's of hours as pro bono but on ground truth appears not the same as claimed.

(d) Restrictive Attorney Licensing Regime: The United States maintains one of the most restrictive attorney licensing regimes in the developed world. Foreign attorneys, even those with extensive legal training and experience, are prohibited from representing clients in U.S. courts without first obtaining a license from the relevant state bar, a process that requires passing state-specific bar examinations, meeting residency requirements, and often completing additional years of legal education. The pro hac vice rule, which in theory allows out-of-state or foreign attorneys to appear for specific cases, is in practice limited to attorneys already licensed in another U.S. state and requires a local sponsor. This regulatory scheme eliminates an entire category of potential affordable legal representation for indigent Americans.

(e) Discrimination and Arrogance by Professional Counsel: Plaintiff encountered arrogance and dismissive treatment from attorneys contacted for potential representation. When institutional defendants are represented by large, well-resourced law firms, the asymmetry of power is magnified for a pro se plaintiff who cannot obtain counsel. Statements and arguments made by pro se litigants are routinely dismissed or ignored by courts, while identical arguments presented by licensed counsel receive serious consideration. This dual standard constitutes a de facto discrimination based on economic status.

**16.** Plaintiff's experience is probably not unique. It is representative of the experience of millions of Americans who are denied access to justice every year because they cannot afford legal representation. The United States ranks 107th out of 142 countries on accessibility and affordability of civil justice, according to the World Justice Project's 2024 Rule of Law Index, a decline of 42 spots from 2015 when the U.S. ranked 65th. This is a national disgrace that demands judicial attention and systemic reform.

## V. THE JUSTICE GAP IN AMERICA: A SYSTEMIC CRISIS

**17.** The United States is in the midst of a well-documented, systemic crisis in access to civil justice. This crisis is not theoretical or speculative; it is supported by overwhelming empirical evidence from government studies, academic research, bar association reports, and judicial observations. The scale of the crisis is staggering, and its consequences for the most vulnerable members of American society are devastating.

### A. The Scale of the Justice Gap

**18.** According to the American Academy of Arts and Sciences report "Achieving Civil Justice," approximately 150 million new civil legal problems arise annually in the United States, and approximately 120 million of these problems go completely unaddressed. Only 14% of civil justice problems are ever taken to a court or hearing body. Rebecca Sandefur's research, cited in the Academy's report, demonstrates that the vast majority of Americans who face serious

civil legal problems simply endure the consequences without any form of legal assistance or court intervention.

**19.** The Legal Services Corporation's 2022 Justice Gap Report found that 92% of low-income persons in the United States do not receive adequate, or any, legal assistance for their civil legal problems. Nearly 50 million people fall into what the New York County Lawyers' Association has termed the "justice chasm" every year. Three out of four low-income households eligible for free legal assistance faced one or more civil legal problems in the preceding year, with serious effects on household finances, housing, relationships, safety, employment, and physical and mental health.

**20.** At the court level, approximately 75% of civil cases in state court involve at least one unrepresented party, with approximately 15 million cases per year featuring at least one side lacking a lawyer. In eviction proceedings, 83% of landlords have legal counsel compared to only 4% of tenants. In some state civil court dockets, self-representation exceeds 90%. Pro se plaintiffs win only 3% of final judgments in federal district courts, and 56% of pro se claims fail to survive even a preliminary motion to dismiss. When parties represent themselves, they lose approximately 80-90% of the time.

### B. The Legal Aid Funding Crisis

**21.** The Legal Services Corporation was created by Congress in 1974 as a nonpartisan, congressionally chartered organization to fund civil legal aid for low-income Americans. LSC funds 133 grantee organizations in every state, serving more than 92.4 million eligible persons. However, adjusted for inflation, federal funding for LSC has declined by nearly 40% over the last three decades. LSC began in 1974 with a budget, in today's dollars, of $880 million, yet today it serves a far larger eligible population with fewer real dollars. Professor Tonya Brito of the University of Wisconsin Law School, writing in Daedalus (2019), describes this as a betrayal of the promise of Gideon.

**22.** There is less than one legal aid attorney for every 10,000 poor people across the country. There is one legal aid lawyer per 6,861 low-income clients, compared to one lawyer for every 525 persons in the general population. In 2005, the Legal Services Corporation's own survey found that for every client served, a second client was turned away. By 2022, LSC grantees were unable to provide any or enough help for 71% of civil legal problems brought to them, an estimated 1.4 million problems per year.

### C. The Consequences of the Justice Gap

**23.** The consequences of the justice gap are not merely inconvenience; they are devastating for individuals, families, and communities. Civil legal problems involving housing, employment, education, domestic violence, child custody, government benefits, healthcare, and consumer credit cascade into broader social crises. A wage garnishment leads to inability to pay rent, which leads to eviction, which leads to job loss and family disruption. A denied disability benefits claim leads to homelessness. An unrepresented parent loses custody of children to an abusive spouse who can afford counsel. These are not hypothetical scenarios; they are documented realities occurring in American courts every single day.

**24.** The most prevalent types of civil legal problems include: consumer credit and debt collection (now the most numerous type of civil case), housing and eviction, family law, domestic violence, government benefit denials, employment disputes, and healthcare access. Debt collection actions are won overwhelmingly by default because defendants lack legal help. Professor Carpenter, Shanahan, Steinberg, and Mark have observed that in "primarily lawyerless" courts, "traditional adversary litigation has largely disappeared, the judicial role is not working, the law is not developing, and people's court experiences amplify inequality and human suffering."

**25.** The economic efficiency argument is equally compelling. New York City's right-to-counsel law for tenants facing eviction, enacted in 2017, produced dramatic results. A study by the

National Bureau of Economic Research found that tenants with attorneys were considerably less likely to face possessory judgments, smaller monetary damages, fewer eviction warrants, and ultimately fewer evictions. One study estimated annual city savings of $320 million on an investment of only $199 million, producing a net savings of $121 million per year. For every dollar spent on pre-eviction legal services, the city saved $4 on homeless services.

## VI. THE CIVIL RIGHT TO COUNSEL: FROM GIDEON TO CIVIL GIDEON

**26.** The right to counsel is one of the most fundamental guarantees in the American legal system. The Supreme Court's landmark decision in Gideon v. Wainwright, 372 U.S. 335 (1963), established that the Sixth Amendment guarantees the right to counsel for every criminal defendant in a felony trial, applicable to states through the Fourteenth Amendment Due Process Clause. Justice Black, writing for a unanimous Court, declared: **"any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth.**" Clarence Earl Gideon was a pauper who sent a handwritten letter, or "scrawl letter," to the Supreme Court pleading that he was denied counsel by the Florida trial court. The nine judges of the Supreme Court treated the letter as a petition and allowed his plea by relaxing procedural law, creating history and forming the basis for the concept of public interest litigation worldwide.

### A. Gideon's Legacy and the Criminal-Civil Divide

**27.** While Gideon established the right to appointed counsel in criminal cases (allegedly for defendants (accused criminals)), the Supreme Court has consistently refused to extend this right to civil proceedings. In Lassiter v. Department of Social Services, 452 U.S. 18 (1981), the Court held that the Constitution does not require the appointment of counsel for indigent parents in every parental status termination proceeding. The Court created a case-by-case balancing test under the Due Process Clause, holding that counsel is required only when, "if successful as to the existing claim, [the plaintiff] would [be deprived] of physical liberty." This created a categorical distinction between criminal and civil proceedings that has had devastating consequences for indigent Americans and many non-Americans as well.

**28.** The practical consequence of Lassiter is that in civil proceedings involving shelter, family integrity, personal safety, health care, subsistence, and child custody, there is no constitutional right to counsel, even when the consequences of losing are as severe as those in criminal proceedings. An eviction that renders a family homeless may be more devastating than a criminal conviction for a minor offense, yet the Constitution, as currently interpreted, provides no right to counsel in the former while guaranteeing it in the latter.

### B. The Civil Gideon Movement

**29.** The term "Civil Gideon" refers to the movement to extend the right to counsel recognized in Gideon v. Wainwright from criminal to civil proceedings, particularly those involving basic human needs such as housing, food, safety, health, education, and child custody. This movement has gained significant momentum in recent years, supported by a growing body of empirical evidence demonstrating that the presence of counsel dramatically improves outcomes for indigent litigants and produces net fiscal savings for governments.

**30.** In 2005, then-ABA President-elect Michael Greco called for a civil right to counsel at the Alabama Law Foundation, receiving a standing ovation. By 2006, the ABA House of Delegates unanimously passed Resolution 112A, urging federal, state, and local governments to provide legal counsel as a matter of right at public expense in cases where basic human needs are at stake: shelter, food, safety, health, and child custody. In 2018, the ABA adopted Resolution 114, urging right to counsel in civil cases involving threat to physical liberty. The ABA acknowledged its proposal was "substantially narrower" than what would be necessary to close the justice gap, advocating a "careful, incremental" state-by-state evolution.

**31.** As of 2024, 18 right-to-counsel bills have been enacted in 14 states, and 84 additional bills are pending in Congress and state legislatures. Notably, no jurisdiction provided a civil right to counsel for tenants prior to 2017, but by 2021, three states and 13 cities had enacted right-to-counsel-in-eviction laws. The National Coalition for a Right to Civil Counsel includes 100+ organizations across 30+ states and the District of Columbia.

### C. Scholarly Support for Civil Gideon

**32.** Professor Tonya L. Brito of the University of Wisconsin Law School, writing in Daedalus (2019), has argued that a right to civil counsel must be: (1) national in scope; (2) adequately funded; (3) protected from political influence; (4) available early and often in the legal process; and (5) not limited by "inadequately informed judgments of who is worthy of representation."

**33.** The landmark article by Brito, Pate, Gordon, and Ward, "What We Know and Need to Know about Civil Gideon," published in the South Carolina Law Review (Vol. 67, Issue 2, 2016, pp. 223-243, cited by 70 subsequent works), provides the most comprehensive synthesis of empirical evidence on civil right to counsel outcomes.

**34.** Stanford Law School's publication "Civil Gideon: A Judge's Perspective on the Right to Counsel in Eviction Cases" (Stanford Journal of Civil Rights and Civil Liberties, April 2024) documents that many judges who preside over eviction dockets have become vocal supporters of the right to counsel for poor people. Judge Shera C. Grant interviewed fellow judges across Alabama and found strong endorsement for right-to-counsel reforms.

**35.** Gene R. Nichol, in "The Roberts Court and Access to Justice" (Case Western Reserve Law Review, Vol. 59, 2009, p. 821, cited by 11 subsequent works), has documented how the Supreme Court's standing doctrine, pleading standards, and class action limitations under the Roberts Court have further restricted access to justice for the most vulnerable Americans.

## VII. PUBLIC INTEREST LITIGATION: ORIGINS, PRINCIPLES, AND PURPOSE

**36.** Public Interest Litigation ("PIL") is a legal mechanism designed to provide access to courts for marginalized, disadvantaged, and unrepresented individuals and groups who would otherwise be unable to seek judicial redress due to poverty, illiteracy, lack of resources, or social and economic disadvantage.

### A. Origins of Public Interest Litigation in the United States

**37.** The concept of Public Interest Litigation originated in the United States of America in the late nineteenth century. The famous Gideon case formed the basis for the concept of Public Interest Litigation. The first Legal Aid Office was established in New York City in 1876, serving as a primary defender in criminal matters for German immigrants. During the 1960s, PIL received financial support from the Office of Economic Opportunity, encouraging lawyers to take cases for underprivileged groups involving environment, public health, consumer exploitation, and weaker sections of society.

**38.** The term "public law litigation" was first used by American academic Abram Chayes in his seminal 1976 article "The Role of the Judge in Public Law Litigation," published in the Harvard Law Review (Vol. 89, p. 1281), to describe lawyers and public-spirited persons seeking social change through courts.

**39.** The Ford Foundation played a pivotal role in the development of PIL in the United States. Hershkoff and Hollander, in "Rights into Action: Public Interest Litigation in the United States," published in the Ford Foundation's volume "Many Roads to Justice" (2000), documented how PIL in the United States evolved from civil rights era litigation to modern public interest practice, focusing on women's rights, minority rights, and immigrant and refugee rights.

### B. The Indian PIL Model: A Comparative Framework

**40.** India's approach to PIL provides a striking contrast to the restrictive standing requirements of American federal courts. The Indian Supreme Court, under the leadership of Justices P.N. Bhagwati and V.R. Krishna Iyer in the late 1970s and 1980s, transformed PIL from an American import into a uniquely powerful tool for social justice by dramatically relaxing locus standi requirements.

**41.** In S.P. Gupta v. Union of India, AIR 1982 SC 149, Justice Bhagwati declared: "Where a person or determinate class of persons is by reason of poverty, helplessness or disability or socially or economically disadvantaged position, unable to approach the Court for relief, any member of the public can maintain an application for an appropriate direction." PIL was described as "a strategic arm of the legal aid movement intended to bring justice within the reach of those who on account of their indigence, illiteracy and lack of resources, were unable to reach the courts." (See Desai and Muralidhar, Public Interest Litigation: Potentials and Problems, Oxford University Press, 2000.)

**42.** The results of India's PIL jurisprudence have been transformative. In Hussainara Khatoon v. State of Bihar, [1979] 3 S.C.R. 169, a PIL petition filed by attorney Kapila Hingorani resulted in the release of more than 40,000 undertrial prisoners. In Vishaka v. State of Rajasthan, AIR 1997 SC 3011, a PIL resulted in landmark guidelines on sexual harassment. In M.C. Mehta v. Union of India, a series of PILs addressed environmental protection.

**43.** Dr. Inderpreet Kaur Narang, in "Public Interest Litigation: A Comparative Analysis of its Evolution and Impact in the USA and India" (ShodhKosh, Vol. 2(2), 2021, pp. 417-424, DOI: 10.29121/shodhkosh.v2.i2.2021.5327), documented the key differences between American and Indian approaches. India's inclusive approach is described as "an essential instrument for maintaining democratic principles, guaranteeing openness, and safeguarding public rights."

### C. Global Perspectives on Public Interest Litigation

**44.** Professor Xandra Kramer, in "Public Interest Litigation at the Intersection of Public Law and Private Enforcement" (Netherlands International Law Review, Vol. 71, Issue 3, 2025, pp. 391-402, DOI: 10.1007/s40802-025-00275-x), identifies three procedural pathways through which public interests are litigated globally. Kramer concludes that PIL "fulfils an important role in legal mobilisation with the aim to pursue the enforcement of a multitude of collective interests."

**45.** The ECCHR defines PIL as "a legal action initiated in a court of law for the enforcement of public interest where the public interest is violated or threatened." See https://www.ecchr.eu/en/glossary/public-interest-litigation/.

**46.** Wikipedia's entry on public interest law provides a comprehensive overview: "Public interest law refers to legal practices undertaken to help poor, marginalized, or under-represented people, or to effect change in social policies in the public interest." See https://en.wikipedia.org/wiki/Public_interest_law.

## VIII. CAUSES OF ACTION

**47.** Plaintiff brings this action on the following causes of action: (A) Declaratory Relief under the Declaratory Judgment Act, 28 U.S.C. Section 2201; (B) Injunctive Relief under 28 U.S.C. Section 2201 and Section 1983; (C) Violation of Due Process under the Fifth and Fourteenth Amendments; (D) Violation of Equal Protection under the Fifth and Fourteenth Amendments; (E) Violation of the Right of Access to Courts under the First and Fourteenth Amendments; and (F) Deprivation of Civil Rights under 42 U.S.C. Section 1983.

## IX. COUNT I: DECLARATORY RELIEF - DUE PROCESS VIOLATION

**48.** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**49.** The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." The Fourteenth Amendment extends this guarantee against state action.

**50.** The current system of civil litigation in the United States, which requires litigants to navigate complex procedural rules, evidentiary standards, and substantive law without the assistance of counsel, and which simultaneously makes counsel unaffordable for the vast majority of indigent Americans, effectively deprives indigent persons of meaningful procedural due process. As the Supreme Court stated in Gideon, "any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." The same logic applies with equal force in civil proceedings where basic human needs are at stake.

**51.** Under the Mathews v. Eldridge balancing test (424 U.S. 319, 1976), the Court must weigh: (1) the private interest affected; (2) the risk of erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest. Applied to civil proceedings involving housing, family integrity, personal safety, and subsistence, the Mathews factors strongly support a right to counsel.

**52.** Plaintiff seeks a declaration that the current system of civil litigation, as applied to indigent persons, violates the Due Process Clause of the Fifth and Fourteenth Amendments.

## X. COUNT II: EQUAL PROTECTION VIOLATION

**53.** Plaintiff incorporates by reference all preceding paragraphs.

**54.** The Equal Protection Clause requires that similarly situated persons be treated similarly. The current system creates two distinct classes: those who can afford representation (who prevail in the vast majority of cases) and those who cannot (who lose 80-90% of the time). This outcome disparity is attributable not to the merits of claims but to systemic advantages that legal representation provides.

**55.** In Boddie v. Connecticut, 401 U.S. 371 (1971), the Court held that indigent persons cannot be denied access to divorce solely because they cannot afford filing fees. The same reasoning applies a fortiori to the denial of access to counsel, which is far more consequential than the denial of a filing fee waiver.

**56.** Plaintiff seeks a declaration that the classification of civil litigants into represented and unrepresented classes, based solely on ability to pay, violates the Equal Protection Clause.

## XI. COUNT III: VIOLATION OF THE RIGHT OF ACCESS TO COURTS

**57.** Plaintiff incorporates by reference all preceding paragraphs.

**58.** The right of access to courts is a fundamental component of the Due Process Clause and the First Amendment right to petition for redress of grievances. In Bounds v. Smith, 430 U.S. 817 (1977), the Court stated that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers." If even prisoners are entitled to meaningful access, it follows a fortiori that free citizens are entitled to meaningful access in civil proceedings.

**59.** When an indigent litigant cannot obtain counsel and loses 80-90% of the time as a pro se plaintiff, the right of access to courts is a formalistic promise devoid of substantive content.

**60.** The systemic exclusion of qualified foreign-trained legal professionals from meaningful participation in civil representation, absent narrowly tailored competency-based alternatives, further burdens indigent litigants' practical access to courts. Plaintiff alleges that a supervised, competency-verified framework permitting participation by qualified overseas counsel in appropriate civil matters would materially reduce cost barriers and advance the constitutional guarantee of meaningful court access.

**61.** Plaintiff seeks a declaration that the systemic barriers described herein violate the right of access to courts secured by the First and Fourteenth Amendments.

## XII. COUNT IV: DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. SECTION 1983

**62.** Plaintiff incorporates by reference all preceding paragraphs.

**63.** 42 U.S.C. Section 1983 provides that every person who, under color of any statute, ordinance, regulation, custom, or usage, subjects any person to the deprivation of any rights secured by the Constitution and laws, shall be liable to the party injured.

**64.** Defendants, acting under color of law and through their enforcement of the current attorney licensing regime, the chronically underfunded civil legal aid system, and the absence of a civil right to counsel, have subjected Plaintiff and the class to the deprivation of rights secured by the Fifth and Fourteenth Amendments.

**65.** Develop, or direct the appropriate rulemaking bodies to consider developing, a competency-based supervised framework permitting qualified foreign-trained legal professionals to provide limited civil representation, legal drafting assistance, or supervised advocacy in designated categories of proceedings where access-to-justice needs are acute.

**66.** Plaintiff seeks declaratory and injunctive relief pursuant to 42 U.S.C. Section 1983.

## XIII. REQUEST FOR INJUNCTIVE RELIEF

**67.** Plaintiff respectfully requests that this Court issue preliminary and permanent injunctive relief requiring Defendants to take the following actions:

1. Establish a comprehensive system for providing legal representation to all indigent persons in civil proceedings involving basic human needs, including but not limited to housing, family integrity, personal safety, health, subsistence, and child custody, consistent with the ABA's Resolution 112A (2006) and Resolution 114 (2018);
2. Substantially increase funding for the Legal Services Corporation to a level adequate to meet the civil legal needs of eligible Americans;
3. Adopt rules permitting qualified foreign legal professionals to provide legal representation in U.S. courts under a supervised framework;
4. Reform court procedures to accommodate self-represented litigants, including simplified pleading requirements and prohibition of disparate treatment based on representation status;
5. Require institutional defendants to disclose any financial relationships or conflicts of interest that may compromise the independence of counsel;
6. Establish independent oversight mechanisms for disciplinary proceedings against attorneys who engage in misconduct or discrimination;
7. Such other injunctive relief as the Court deems just and proper.

## XIV. PRAYER FOR RELIEF

**68.** WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Certify the class defined herein pursuant to Rule 23 of the Federal Rules of Civil Procedure;
(b) Grant declaratory relief that the current system violates the Due Process Clause, Equal Protection Clause, and the right of access to courts;
(c) Issue preliminary and permanent injunctive relief as set forth in Section XIII;
(d) Award Plaintiff such compensatory and punitive damages as are just and proper;
(e) Award Plaintiff the costs of this action, including reasonable attorney's fees pursuant to 42 U.S.C. Section 1988;
(f) Grant leave to proceed in forma pauperis pursuant to 28 U.S.C. Section 1915;
(g) Retain jurisdiction over this matter to ensure compliance with any orders issued; and
(h) Grant such other and further relief as the Court deems just and proper.

## XV. ANTI-DISMISSAL ARGUMENTS AND PRESERVATION OF APPEAL RIGHTS

**69.** Plaintiff anticipates and respectfully addresses potential grounds for dismissal, and respectfully requests that this Court consider the following arguments in favor of allowing this action to proceed to the merits:

### (A) Standing: Injury in Fact, Causation, and Redressability

**70.** Under Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), Article III requires: (1) injury in fact that is concrete and particularized and actual or imminent; (2) causation; and (3) redressability. Plaintiff submits these are satisfied because:

(i) Plaintiff has personally suffered concrete, actual harm in the form of inability to obtain legal representation, inability to access the courts for meaningful redress, and economic harm caused by exorbitant costs. This is not a generalized grievance; it is a specific, personal, and ongoing injury.

(ii) Causation is established because the injury is fairly traceable to the Defendants' maintenance of the current attorney licensing regime, the inadequate funding of civil legal aid, and the failure to recognize a civil right to counsel.

(iii) Redressability is established because this Court has the power to grant the declaratory and injunctive relief sought herein.

### (B) Political Question Doctrine

**71.** The United States Constitution is the supreme law of the land, and it is the duty of the judiciary to say what the law is. The Supreme Court in Gideon v. Wainwright did not defer to the political process when it recognized the right to counsel in criminal cases. The political process has demonstrably failed: Congress has allowed LSC funding to decline by 40% in inflation-adjusted terms over three decades.

### (C) Prudential Standing and Generalized Grievances

**72.** This action does not raise a mere generalized grievance. As recognized in Flast v. Cohen, 392 U.S. 83 (1968), the prohibition against generalized grievances does not apply when a plaintiff challenges the constitutionality of federal action under specific constitutional limitations on the deprivation of liberty and property.

### (D) Plaintiff's Foreign Residency and Personal Jurisdiction

**73.** Personal jurisdiction exists because the Defendants are residents of and operate within the United States and the Central District of Illinois; the class includes millions of American residents; and the systemic barriers affect all persons who seek access to the United States justice system.

### (E) Request for Leave to Amend

**74.** Should this Court identify any deficiency, Plaintiff respectfully requests a reasonable opportunity to amend the complaint rather than dismissal. The issues raised herein are of profound public importance affecting millions of Americans.

## XVI. RESERVATION OF APPEAL RIGHTS

**75.** Plaintiff expressly reserves all rights to appeal any adverse ruling, including but not limited to dismissal, to the United States Court of Appeals for the Seventh Circuit, and if necessary, to the Supreme Court of the United States. This reservation is made for the greater good of society, particularly for the millions of indigent Americans who are unable to secure legal representation and access to justice through the existing system.

**76.** Plaintiff submits that this action is filed with absolute litigation privilege and in the public interest. Plaintiff draws inspiration from Clarence Earl Gideon, who wrote a scrawl letter to the Supreme Court and changed the course of American jurisprudence. Plaintiff also draws inspiration from Kapila Hingorani, whose public interest petition in the Hussainara Khatoon case resulted in the release of more than 40,000 prisoners.

**77.** Plaintiff is aware that this filing may invite criticism from professional attorneys and institutional interests that benefit from the current system. However, Plaintiff is motivated by a genuine commitment to justice and the belief that the American justice system, at its best, is capable of self-correction and reform.

## XVII. CONCLUSION

**78.** The American justice system is at an inflection point. The promise of "EQUAL JUSTICE UNDER LAW" engraved on the facade of the Supreme Court building is, for tens of millions of Americans, a hollow promise. The United States ranks 112th out of 143 countries on civil justice accessibility (See: https://civilrighttocounsel.org/major_developments/u-s-rank-on-access-to-civil-justice-in-rule-of-law-index-116th-out-of-142-countries/ ). Ninety-two percent of low-income Americans receive no or inadequate legal assistance. Pro se plaintiffs lose 80-90% of the time. The average attorney charges $500 per hour, while the average indigent American earns minimum wage or less.

**79.** The existing solutions are demonstrably inadequate. Legal aid programs turn away the majority of those who seek help. Pro bono commitments fail to reach the vast majority of those in need. Court self-help centers and simplified forms are insufficient to substitute for the strategic, analytical, and advocacy functions that legal representation provides in an adversarial system designed for attorney participation.

**80.** This action is brought not as a personal grievance but as a public interest litigation seeking systemic reform. The specific reforms sought are not radical proposals. They are incremental, evidence-based reforms that have been endorsed by the American Bar Association, adopted in whole or in part by multiple states and cities, and demonstrated by empirical evidence to produce both better justice outcomes and net fiscal savings.

**81.** Plaintiff respectfully asks this Court to give this action the serious consideration that the magnitude of the justice crisis demands, to afford Plaintiff every opportunity to cure any procedural deficiency, and to allow this case to proceed to the merits so that the fundamental question of access to justice in America can be adjudicated. The eyes of millions of Americans who have been denied access to justice are upon this Court.

**82.** Plaintiff respectfully requests that the Court, to the extent appropriate, consider any relief available sua sponte or on its own motion consistent with law and equity.

Respectfully submitted,

/s/ Dipesh Singla

**Dipesh Singla, Plaintiff Pro Se**

#184, NAC, Shivalik Enclave

Manimajra, Chandigarh, 160101

India

Dated: April 16, 2026

## EXHIBIT A: STATISTICAL EVIDENCE AND DATA

| Statistic | Data Point | Source |
|---|---|---|
| Low-income Americans receiving no/inadequate legal help | 92% | LSC 2022 Justice Gap Report |
| Civil legal problems per year | ~150 million | American Academy of Arts and Sciences |
| Civil legal problems unaddressed | ~120 million | American Academy of Arts and Sciences |
| Civil legal problems taken to court | 14% | Rebecca Sandefur research |
| State civil cases with unrepresented party | 75% | Stanford Law School |
| Eviction: landlords with counsel | 83% | PMC/NIH 2025 Analysis |
| Eviction: tenants with counsel | 4% | PMC/NIH 2025 Analysis |
| Pro se plaintiff win rate (federal) | 3% | Federal District Court data (1998-2017) |
| Pro se claims failing motion to dismiss | 56% | N.D. California study |
| Self-represented loss rate | 80-90% | Cornell Journal of Law and Public Policy |
| U.S. civil justice rank (WJP 2024) | 107th of 142 | World Justice Project Rule of Law Index |
| Legal aid clients turned away by LSC | 71% | LSC 2022 Report |
| LSC funding decline (inflation-adjusted, 30 years) | ~40% | Tonya Brito, Daedalus (2019) |
| Average attorney hourly rate | ~$300 | Industry data |
| Legal aid lawyer per low-income client ratio | 1:6,861 | National Center for Access to Justice |
| ABA Civil Gideon Resolution | 112A (2006), 114 (2018) | American Bar Association |
| States with enacted RTC laws | 14 states (18 bills) | NCCRC 2024 Year in Review |
| NYC RTC program annual savings | $320M on $199M investment | NBER Study |
| India PIL: prisoners released (Hussainara Khatoon) | 40,000+ | Supreme Court of India |

*Table 1. Key Statistics on the Justice Gap in America*

## EXHIBIT B: BIBLIOGRAPHY AND LINKED SOURCES

### I. Cases Cited

- Boddie v. Connecticut, 401 U.S. 371 (1971).
- Bounds v. Smith, 430 U.S. 817 (1977).

- Brown v. Board of Education, 347 U.S. 483 (1954).
- Flast v. Cohen, 392 U.S. 83 (1968).
- Gideon v. Wainwright, 372 U.S. 335 (1963).
- Hussainara Khatoon v. State of Bihar, [1979] 3 S.C.R. 169 (India).
- Johnson v. Johnson, 466 F.3d 1213 (10th Cir. 2006).
- Khalsa v. Colorado Mountain College, No. 22-cv-01613-MEH (D. Colo. 2022).
- Lassiter v. Department of Social Services, 452 U.S. 18 (1981).
- Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).
- Mathews v. Eldridge, 424 U.S. 319 (1976).
- Massachusetts v. EPA, 549 U.S. 497 (2007).
- S.P. Gupta v. Union of India, AIR 1982 SC 149 (India).
- Sierra Club v. Morton, 405 U.S. 727 (1972).
- Turner v. Rogers, 564 U.S. 431 (2011).
- Vishaka v. State of Rajasthan, AIR 1997 SC 3011 (India).


**II. Statutes and Rules**


- 28 U.S.C. Section 1331 (Federal Question Jurisdiction).
- 28 U.S.C. Section 1343 (Civil Rights).
- 28 U.S.C. Section 1391 (Venue).
- 28 U.S.C. Section 1915 (Proceedings In Forma Pauperis).
- 28 U.S.C. Section 2201 (Declaratory Judgment Act).
- 42 U.S.C. Section 1983 (Civil Action for Deprivation of Rights).
- 42 U.S.C. Section 1988 (Attorney's Fees).
- 42 U.S.C. Section 2996 et seq. (Legal Services Corporation Act).
- Rule 23, Federal Rules of Civil Procedure (Class Actions).
- D.C.Colo.LAttyR 15 (Civil Pro Bono Representation).


**III. Scholarly Articles and Books**


- Brito, Tonya L. "The Right to Civil Counsel." Daedalus (2019).
- Brito et al. "What We Know and Need to Know about Civil Gideon." South Carolina Law Review, Vol. 67, Issue 2 (2016), pp. 223-243.
- Chayes, Abram. "The Role of the Judge in Public Law Litigation." Harvard Law Review, Vol. 89, p. 1281 (1976).
- Desai & Muralidhar. Public Interest Litigation: Potentials and Problems. Oxford University Press, 2000.
- Grant, Shera C. "Civil Gideon: A Judge's Perspective." Stanford J. of Civil Rights & Civil Liberties (2024).
- Hershkoff & Hollander. "Rights into Action: PIL in the United States." Ford Foundation, 2000.
- Kramer, Xandra. "PIL at the Intersection of Public and Private Enforcement." Netherlands Int'l Law Review, Vol. 71(3), 2025.
- Narang, I.K. "PIL: A Comparative Analysis." ShodhKosh, Vol. 2(2), 2021, pp. 417-424.
- Nichol, Gene R. "The Roberts Court and Access to Justice." Case Western Reserve Law Review, Vol. 59, 2009.
- Prasad, M.R.K. & Naik, B.C. "Public Interest Litigation." LL.M. 203, NLU Delhi.

- Sunstein, Cass R. "Standing and the Future of Public Law." Michigan Law Review, Vol. 88(1), 1989.
- Baxi, Upendra. "Taking Suffering Seriously." Int'l J. Soc. L., Vol. 29(4), 1981.


## IV. Linked Web Sources


American Bar Association - Civil Right to Counsel https://www.americanbar.org/groups/legal_aid_indigent_defense/civil_right_to_counsel1/civil_right_to_counsel/

ABA - Gideon at 50 https://www.americanbar.org/groups/bar-leadership/publications/bar_leader/2007_08/3206/gideon/

BBN Legal - PIL Origins https://bnblegal.com/article/public-interest-litigation-origin-constitutional-aspect-guidelines/

Brown ULR - Toward a Civil Gideon https://www.brownulr.org/blogposts/toward-a-civil-gideon

Civil Right to Counsel - Lessons from Gideon https://civilrighttocounsel.org/uploaded_files/17/Lessons_from_Gideon__Abel_.pdf

Cornell Law - Public Interest https://community.lawschool.cornell.edu/careers/public-service/what-is-public-interest/

Duke Law - Law and Contemporary Problems https://scholarship.law.duke.edu/cgi/viewcontent.cgi?article=3755&context=lcp

ECCHR - PIL Glossary https://www.ecchr.eu/en/glossary/public-interest-litigation/

Fordham Urban Law Journal - PIL Theory https://ir.lawnet.fordham.edu/cgi/viewcontent.cgi?article=2310&context=ulj

GSDRC - Rights into Action https://gsdrc.org/document-library/rights-into-action-public-interest-litigation-in-the-united-states/

IJESRR - PIL (Naina, 2017) https://ijesrr.org/publication/44/2017%20june%20arts%20journal%20naina.pdf

Lawctopus - PIL https://www.lawctopus.com/academike/public-interest-litigation2711/

LSC - Justice Gap Report https://justicegap.lsc.gov/

Manupatra - PIL: Access to Justice https://www.manupatra.com/roundup/379/articles/public%20interest%20litigation.pdf

NYU Law - Rights into Action https://www.law.nyu.edu/sites/default/files/upload_documents/Hershkoff%20%26%20Hollander,%20Rights%20into%20Action%20-%20Public%20Interest%20Litigation%20in%20the%20United%20States.pdf

Philadelphia Bar - Civil Gideon History https://philadelphiabar.org/?pg=CivilGideonHistory&appNum=2

ResearchGate - Comparative PIL Study https://www.researchgate.net/publication/275228433_A_Comparative_Study_on_the_Domestic_and_Overseas_Public_Interest_Litigation_System

SCIRP - PIL Academic Paper https://www.scirp.org/journal/paperinformation?paperid=55468

Seattle U Faculty - Access to Attorneys https://digitalcommons.law.seattleu.edu/cgi/viewcontent.cgi?article=1356&context=faculty

SC Law Review - Civil Gideon https://scholarcommons.sc.edu/cgi/viewcontent.cgi?article=4161&context=sclr

Springer - PIL Public/Private Enforcement https://link.springer.com/article/10.1007/s40802-025-00275-x

Stanford Law - Civil Gideon: Judge's Perspective https://law.stanford.edu/publications/civil-gideon-a-judges-perspective-on-the-right-to-counsel-in-eviction-cases/

Touro Law - Right to Counsel in Civil Cases https://www.tourolaw.edu/academics/uploads/pdfs/_9_www_davis_in%20the%20interests%20of%20justice_sm_final_12.23.08_.pdf

Wikipedia - Public Interest Law https://en.wikipedia.org/wiki/Public_interest_law

Yale Law - Public Interest Pathways https://law.yale.edu/student-life/career-development/alumni/career-pathways/public-interest

Georgetown Law - Public Interest https://www.law.georgetown.edu/your-life-career/career-exploration-professional-development/for-jd-students/explore-legal-careers/practice-settings/public-interest/

Case Western - Roberts Court and Access https://scholarlycommons.law.case.edu/cgi/viewcontent.cgi?article=2289&context=cuslj

ePathshala - PIL Module (BBAU) https://www.bbau.ac.in/dept/HR/TM/LL.M.203%20Unit%205.Public%20Interest%20Litigation.ePathshala.pdf

**V. Uploaded Documents**

- 57_ShodhKosh_RS_6559.pdf - Narang, I.K. (2021). PIL: A Comparative Analysis. ShodhKosh, 2(2), 417-424.
- 51d23d60...pdf - Order on Motion for Appointment of Counsel, Khalsa v. Colorado Mountain College, No. 22-cv-01613-MEH (D. Colo. 2022).
- LL.M.203 Unit 5 PIL.ePathshala.pdf - Prasad, M.R.K. & Naik, B.C. PIL. LL.M. 203, NLU Delhi.

## VERIFICATION

I, Dipesh Singla, hereby verify under penalty of perjury under the laws of the United States of America that the information set forth in this Complaint is true and correct to the best of my knowledge, information, and belief. This Complaint is filed in the public interest and for the greater good of society.

/s/ Dipesh Singla

Dated: April 16, 2026

**Exhibits:**
**Date September 14, 2022**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Michael E. Hegarty**

| | | | |
|---|---|---|---|
| Civil Action No: | 22-cv-1613-MEH | Date: | September 14, 2022 |
| Courtroom Deputy: | Christopher Thompson | FTR: | Courtroom A 501 |

| *Parties:* | *Counsel:* |
|---|---|
| PARAMROOP KHALSA,<br><br>Plaintiff, | Pro Se |
| v. | |
| COLORADO MOUNTAIN COLLEGE, POLICE ACADEMY, et al.,<br><br>Defendant. | Lucia Padilla<br>Warren Beck |

**COURTROOM MINUTES/MINUTE ORDER**
**SCHEDULING CONFERENCE**

**Court in session: 10:05 a.m.**

Court calls case. Appearances of the Pro Se Plaintiff and counsel.

Discussion held regarding the Defendant's [ECF 11] *Motion to Dismiss* filed on August 30, 2022. The Plaintiff requests for an extension of time to respond to the *motion*. The Court will grant the request and set a response date of September 28, 2022. The Court also explains to the Plaintiff of his ability to file a motion requesting the Court to appoint Pro Bono counsel.

Discussion held regarding the possibility of staying the case while the Defendant's *Motion to Dismiss* is pending. The Court will still enter the Scheduling Order, as stated on the record, but the parties and the Court agree discovery should be stayed while the *motion* is pending.

**ORDERED:** Plaintiff's response to Defendant's [ECF 11] *Motion to Dismiss* is due **on or before September 28, 2022**.

The Court will enter a Scheduling Order, but Discovery is STAYED while the [ECF 11] *Motion to Dismiss* is pending.

THE FOLLOWING WILL CONFIRM THE ACTIONS TAKEN AND DATES SET AT THE SCHEDULING CONFERENCE HELD THIS DATE:

**Order Dated:** September 26, 2022. Denial of Pro Bono Attorney's Application.

WL 10333529, at *1. Defendant has not demonstrated limited financial means through affidavit or otherwise. He simply states that he looked for an attorney for two weeks and "was not able to find one." ECF 20, 2. Without demonstrating limited financial means, the Court is unable to determine whether Plaintiff is eligible for panel representation. D.C.Colo.LAttyR 15(e). Once Defendant "can demonstrate his eligibility and that he made unsuccessful attempts to obtain





counsel through other means, he may renew his request for the appointment of pro bono counsel." *Fleming*, 2017 WL 10333529, at *2. For the reasons described, Plaintiff's Motion for Appointment of Counsel [filed September 21, 2022; ECF 20] is **denied without prejudice** with leave to refile in accordance with this Order.

Entered and dated at Denver, Colorado, this 26th day of September, 2022.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge